UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ADAM BLIZZARD,

          Petitioner,

v.                                           Case No. 3:14-cv-650-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

          Respondents.

_____

## ORDER

### I. Status

       Petitioner Adam Blizzard, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Petition, Doc. 1) under 28 U.S.C. § 2254. In the Petition, Blizzard challenges a 2008 state court (Duval County, Florida) judgment of conviction for first degree murder. Respondents have submitted a memorandum in opposition to the Petition. See Respondent's Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response, Doc. 8) with exhibits (Resp. Ex.). Blizzard submitted a brief in reply (Reply, Doc. 12), and a notice of supplemental authority (Doc. 15). This case is ripe for review.

### II. Procedural History

       On December 6, 2007, the State of Florida charged Blizzard by indictment with first degree murder. Resp. Ex. A, Indictment, at 37-38. Blizzard proceeded to trial, and the jury found him guilty on May 2, 2008. Resp. Ex. A at 124. Blizzard filed a motion for

new trial, which the court denied.  Resp. Ex. A at 125-127.  The court sentenced Blizzard to life imprisonment without the possibility of parole.  Resp. Ex. A at 153-58.

With the benefit of counsel, Blizzard appealed his conviction to the First District Court of Appeal.  Resp. Ex. J.  The State filed an answer brief (Resp. Ex. K), and Blizzard filed a reply brief.  Resp. Ex. L.  On November 20, 2009, the First District Court of Appeal affirmed Blizzard's conviction and sentence per curiam without issuing a written opinion. Blizzard v. State, 22 So. 3d 540 (Fla. 1st DCA 2009) (table); Resp. Ex. M.  The mandate issued on December 8, 2009.  Resp. Ex. N.

Blizzard later filed a pro se petition for writ of habeas corpus in the First District Court of Appeal (Resp. Ex. O), which the court construed as a petition alleging ineffective assistance of appellate counsel pursuant to Florida Rule of Appellate Procedure 9.141. Resp. Ex. P.  The First District Court of Appeal issued a per curiam opinion expressly denying the petition on the merits.  Blizzard v. State, 44 So. 3d 601 (Fla. 1st DCA 2010); Resp. Ex. Q.  Blizzard filed a motion for extension of time to file a motion for rehearing or rehearing en banc, which the appellate court denied.[1]  Resp. Exs. R, S.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period.  See 28 U.S.C. § 2244(d).

---

[1] Although not directly relevant to the claims in Blizzard's federal petition, Blizzard also filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in state court, which the court denied.  Resp. Ex. T.  Blizzard appealed (Resp. Ex. U), but the State did not file an answer brief (Resp. Ex. V).  The appellate court affirmed the denial per curiam (Resp. Ex. W).  The mandate issued on June 10, 2014. Blizzard v. State, 138 So. 3d 1027 (Fla. 1st DCA 2014) (table); Resp. Ex. X.

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Blizzard's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Limits of Habeas Relief, Exhaustion and Procedural Default

### A. Limits of Habeas Relief

Federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citations omitted). As such, federal habeas "does not lie for errors of state law." Id. at 67 (quotations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id. at 67-68. As such, federal courts may not review claims based exclusively on state law issues even if the

claims are "couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quotation omitted).

## B. **Exhaustion**

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). As the United States Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

To fairly present a claim, the petitioner must present it to the state courts as a federal, constitutional claim rather than as a matter of state law. See Duncan, 513 U.S. at 365-66; Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 456-59 (11th Cir. 2015).

To do so, a petitioner can include "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin, 541 U.S. at 32. But raising a state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan, 513 U.S. at 366. Likewise, merely citing to the federal constitution is insufficient to exhaust a claim in state court. Anderson v. Harless, 459 U.S. 4, 7 (1982); see also McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) ("'The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'") (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)). As explained by the Eleventh Circuit:

> To "fairly present" a claim, the petitioner is not required to cite "book and verse on the federal constitution." Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971) (quotation omitted). Nevertheless, a petitioner does not "fairly present" a claim to the state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 541 U.S. at 32, 124 S. Ct. 1347. In other words, "to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007) (quoting Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir.1998)) (concluding that the petitioner's claims were raised where the petitioner had provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1352 (11th Cir. 2012). "The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." Preston, 785 F.3d at 457 (11th Cir.

2015); see also French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1270-71 (11th Cir. 2015), cert. denied, 136 S. Ct. 815 (2016).

## C. Procedural Default and Exceptions

"[W]hen 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile," a procedural default occurs. Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quotation omitted); see also Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."). In such circumstances, federal habeas review of the claim is typically precluded. Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012); Smith, 256 F.3d at 1138. Nevertheless, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010).

To show cause for a procedural default, "the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." Ward, 592 F.3d at 1157 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" Id. (quoting McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

"[A] claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." Henry v. Warden, Ga. Diag. Prison, 750

F.2d 11226, 1230 (11th Cir. 2014); see also Murray v. Carrier, 477 U.S. 478, 488 (1986); Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his ineffective assistance claim to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. Carrier, 477 U.S. at 488; see also Henderson v. Campbell, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." Henderson, 353 F.3d at 897 (citing Edwards, 529 U.S. at 446 and Carrier, 477 U.S. at 478).

In the absence of a showing of cause and prejudice, a petitioner may obtain consideration on the merits of a procedurally defaulted claim if he can establish that a failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 724. This exception has been described as "exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)), cert. denied, 535 U.S. 926 (2002)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523

U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## VI. <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28.U.S.C. § 2254; <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), <u>cert. granted</u>, <u>Wilson v. Sellers</u>, 137 S. Ct. 1203 (2017); <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011); <u>see also</u> <u>Johnson v. Williams</u>, 568 U.S. 289, --, 133 S. Ct. 1088, 1096 (2013).[2] Thus, the state court need not issue an opinion explaining its rationale in

---

[2] The presumption is rebuttable and may be overcome "when there is reason to think some other explanation for the state court's decision is more likely." <u>Richter</u>, 562 U.S. at 99-100; <u>see also</u> <u>Williams</u>, 568 U.S. at --, 133 S. Ct. at 1096-97. However, "the <u>Richter</u>

order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100; Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim, unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's

presumption is a strong one that may be rebutted only in unusual circumstances." Williams, 133 S. Ct. at 1096.

factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see also Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (regarding § 2254(d)(1)); Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235; Marshall, 828 F.3d at 1285. To

---

[3] The Eleventh Circuit has previously described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016); see also Landers, 776 F.3d at 1294 n.4; Cave v. Sec'y, Dep't of Corr., 638 F.3d 739, 744-47 & n.4, 6 (11th Cir. 2011); Jones v. Walker, 540 F.3d at 1277, 1288 n.5.

determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. <u>Wilson</u>, 834 F.3d at 1239; <u>see also</u> <u>Butts v. GDCP Warden</u>, 850 F.3d 1201, 1204 (11th Cir. 2017). However, in <u>Wilson</u>, the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court.[4] 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," <u>Renico</u> [<u>v. Lett</u>, 449 U.S. 766, 733 (2010)] (quoting [<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)]), and presume that it "follow[ed] the law," [<u>Woods v. Donald</u>, --- U.S. ---, 135 U.S. 1372, 1376 (2015)] (quoting <u>Visciotti</u>, 537 U.S. at 24).

<u>Id.</u> at 1238; <u>see also</u> <u>Williams</u>, 133 S. Ct. at 1101 (Scalia, J., concurring).

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Titlow</u>, 134 S. Ct. at 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). "If this standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 562 U.S. at 102.

---

[4] Although the Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in <u>Wilson</u> remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it. <u>Butts</u>, 850 F.3d at 1205 n.2.

## VII.    Ineffective Assistance of Appellate Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).  This two-part Strickland standard also governs a claim of ineffective assistance of appellate counsel.  Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016).

When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. 2052.  Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments.  See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir.2009).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)); see also Burger v. Kemp, 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

Id.; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) ("failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004); see also Philmore, 575

F.3d at 1264-65 (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal").  Also,

> [a] reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104.  As such, "[a]ppellate counsel might fail to identify a mediocre or obscure basis for reversal without being ineffective under <u>Strickland</u>." <u>Overstreet</u>, 811 F.3d at 1287 (citation omitted).

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163.  Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)).  As stated in <u>Strickland</u>:  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  466 U.S. at 697.

Finally, "the standard for judging counsel's representation is a most deferential one."  <u>Richter</u>, 562 U.S. at 105.  "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel</u>, 822 F.3d at 1262 (quoting <u>Strickland</u>, 466 U.S. at 689).  "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance."  <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also Evans v.</u>

Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Blizzard asserts that the trial court erred by failing to conduct an inquiry pursuant to Faretta v. California, 422 U.S. 806 (1975) before allowing him to represent himself at a pretrial hearing on his motion to dismiss for violation of his speedy trial rights. See Petition at 5; Reply at 2-6. Blizzard asserted this claim in his counseled direct appeal. Resp. Ex. J at 10-11. The First District Court of Appeal summarily affirmed his conviction per curiam without issuing a written opinion. Blizzard, 22 So. 3d at 540; Resp. Ex. M.

To provide context for Blizzard's claim, the Court will review the procedural history as it relates to Blizzard's state court speedy trial challenge. Following Blizzard's arrest, on January 19, 2007, the court appointed the public defender to represent him (Resp. Ex. A at 5), and attorney Debra Billard was assigned to his case. At a pretrial conference on

14

March 27, 2007, Billard asserted that speedy trial would run on July 18, 2007, and the court set jury selection for June 25, 2007. Resp. Ex. A at 191-92. At the final pretrial hearing on June 4, 2007, Blizzard was present and Billard orally moved for a continuance due to continuing depositions and the State's supplemental response to discovery naming twenty-one new category A witnesses. Resp. Ex. A at 196. The court granted the defense motion to continue. Id.

The court scheduled jury selection and trial to begin on December 10, 2007, but three days prior, Billard filed a written motion for continuance due to difficulty locating witnesses. Resp. Ex. A at 40-42. Then on the day of trial, Billard filed a written motion to withdraw as counsel due to a recently discovered conflict of interest within her office. Resp. Ex. A at 44-45. She also filed another motion to continue requesting additional time to depose one of the State's witnesses. Resp. Ex. A at 47-49. Ultimately, the court granted Billard's motion to withdraw, appointed a new lawyer (Charles Fletcher), and continued the trial until March 24, 2008. Resp. Ex. B at 271-76.

On February 15, 2008, Fletcher filed a motion to withdraw as attorney due to delays in receiving payment from the state on other cases. Resp. Ex. A at 78. The court granted the motion and on February 15, 2008, appointed Quentin Till (Resp. Ex. A at 79, 83-84; B at 285-96), who thereafter continuously represented Blizzard throughout the trial proceedings.

On March 11, 2008, Till orally moved for a continuance of the March 24, 2008, trial date. Resp. Ex. B at 312. Because Till had not yet discussed the motion for continuance with Blizzard, the court gave him an opportunity to do so during the hearing. The court then granted the motion. Resp. Ex. B at 314.

On April 2, 2008, the court docketed two handwritten submissions from Blizzard entitled Writ of Habeas Corpus and Notice of Expiration of Speedy Trial Time. Resp. Ex. A at 90-94. In the submissions, Blizzard complained that his speedy trial rights had been "impinged on" and that his rights must not be infringed upon due to the state's inability to provide him with effective assistance of counsel. He asserted that he had been ready to start trial for several months and that he declined attorney Billard's request that he sign a waiver of speedy trial. He moved the court to drop all charges with prejudice. He also moved the court to appoint an attorney, who specialized in constitutional limitations, to represent him.

On April 24, 2008, the parties returned to court for a pretrial conference, at which the court addressed the pro se filings as follows:

> MS. HAZEL: Your Honor, we also received a notice last week from the defendant pro se, a notice of expiration of speedy trial, and I didn't know if Your Honor wanted to address that this morning.
>
> From the State's records, speedy trial was waived back in 2007 when the defense asked for a motion to continue, and, in fact, we will be trying this case Monday.
>
> THE COURT: Do you wish to pursue it, Mr. Till, on behalf of your client?
>
> MR. TILL: Judge, I provided a very good article about speedy trial, speedy games. I was a third attorney in this case, granted he never waived his – stood in court and said on the record that he is in opposition to it, but I informed this Court that first –degree murder case, I wasn't ready to go to trial. I mean, I just picked it up. I hadn't even looked at it.
>
> THE COURT: Right. Sure. Didn't I , if I recall, when you came in on the case, I had called you at your office, it was just before the weekend, you indicated you were going to try to see him no later than Monday after I called you?

MR. TILL:  Yes, sir.

THE COURT:  And you did.

MR. TILL:  Yes, sir.

THE COURT:  And then you indicated with him in court that you needed some additional time to prepare because you would have had to gone to trial like within two weeks, and it involved some DNA and other things.

MR. TILL:  Yes, sir.  Well, I understand his frustration.  The counsel before, you know, he gets in, he goes out, he's been sitting in there for over a year, he filed a motion.  I guess we need a ruling on it.  Maybe Mr. Blizzard wants it.

THE COURT:  What's the nature of the motion?

MR. TILL:  It's his not waiving his speedy trial and here we are –

THE COURT:  And moving for dismissal?

MS. HAZEL:  Yes, Your Honor, that's right.

MR. TILL:  Right, Your Honor.

THE COURT:  Do you want your client to say anything in court, or do you want to advise him?

MR. TILL:  In that regard, Your Honor.

THE COURT:  All right.  Mr. Blizzard, only in the area of the –

THE DEFENDANT:  Motion.

THE COURT:  -- of the procedure of speedy trial.

THE DEFENDANT:  My rights were in violation way before he – back when I had Ms. Billard.  I mean, she asked me to sign it, and I told her no, and that I was ready to go to trial.  She said she can override that, and my signature, and I never agreed to it.

So, I mean, this is three lawyers later. Fletcher, that wasn't my fault. The State of Florida couldn't pay him. I'm steady sitting in here.

THE COURT: Well, I have some concern about – not about the speedy trial, but not delaying it because of the switching of lawyers, and the public defender withdrawing suddenly because of conflict that was learned. I made sure that every hearing we had that you were present in court, one of them was in chambers.

THE DEFENDANT: Not one of them I wasn't present.

THE COURT: And when you sought a delay, I always would turn to you and ask you do you understand – the record, I'm not going to argue with you, the record will speak for itself.

THE DEFENDANT: Okay. All right. It will.

THE COURT: All right. Your motion to dismiss is denied.

Resp. Ex. B at 321-24.

On direct appeal, Blizzard contended that the trial court erred by allowing him to serve as co-counsel in arguing a motion to dismiss for violation of speedy trial without conducting the requisite inquiry under Faretta and without advising him of the dangers of self-representation. In doing so, he relied on Brooks v. State, 703 So. 2d 504 (Fla. 1st DCA 1997) and Madison v. State, 948 So. 2d 975 (Fla. 1st DCA 2007). Resp. Ex. J at 10. Specifically, he asserted that the trial court erroneously allowed him to present arguments in favor of his speedy trial motions, which constituted a core function of an attorney. Resp. Ex. J at 11.

The State responded that no Faretta inquiry was required because Blizzard never represented himself during any portion of his case. Resp. Ex. K at 7-8. The State argued that Blizzard's pro se notice of expiration of speedy trial period and motion to discharge were filed while Blizzard was represented by counsel and did not unequivocally request

the discharge of counsel.  Resp. Ex. K at 7.  Therefore, the State argued, the notice and motion were nullities, having no legal effect under State v. Craven, 955 So. 2d 1182 (Fla. 4th DCA 2007) and Johnson v. State, 974 So. 2d 363, 364-65 (Fla. 2008).  Resp. Ex. K at 7.

In his reply (Resp. Ex. L), Blizzard asserted that the trial court did not treat his pro se motions as nullities but rather exercised its discretion to consider them on their merits. Resp. Ex. L at 2.  He argued that the failure to conduct a Faretta inquiry in such a circumstance was per se reversible error.  Id. at 2-3.

The First District Court of Appeal affirmed Blizzard's conviction and sentence per curiam without issuing a written opinion.  Blizzard v. State, 22 So. 3d 540 (Fla. 1st DCA 2009) (table); Resp. Ex. M.  Presumptively an adjudication on the merits, see Richter, 562 U.S. at 99-100, the appellate court's decision is entitled to deference under § 2254(d). In accordance with Richter, the Court must determine which arguments or theories could have supported the appellate court's decision.  Wilson, 834 F.3d at 1235; see also Marshall, 828 F.3d at 1285.  The Court must also give the First District Court of Appeal the benefit of the doubt and presume that it followed the law in affirming Blizzard's conviction.  See Wilson, 834 F.3d at 1238.

Under the Sixth and Fourteenth Amendments, a criminal defendant has a constitutional right to represent himself when he voluntarily and intelligently elects to do so.  Indiana v. Edwards, 554 U.S. 164, 170 (2008) (citing Faretta v. California, 422 U.S. 806, 807 (1975)).  Before a court permits a defendant to represent himself, the court must conduct a "Faretta hearing," at which the court must advise the defendant of the benefits associated with the right to counsel and determine whether the defendant's

relinquishment thereof is knowing and intelligent.  See Gill v. Mecusker, 633 F.3d 1272, 1293 (11th Cir. 2011).  The trial court's obligation to conduct a "Faretta hearing" is triggered by the defendant's clear and unequivocal assertion of a desire to represent himself.  Id.  "In addition, while a defendant does not have a right to 'hybrid' representation, Faretta warnings are required whenever the trial court permits a defendant to undertake a portion of his defense that is a 'core function' of a lawyer."  Boyd v. State, 45 So. 3d 557, 559 (Fla. 4th DCA 2010) (citing Brooks, 703 So. 2d at 505-06 and Madison, 948 So. 2d at 975).

    In summarily affirming the conviction, the First District Court of Appeal could have accepted the State's argument that no Faretta inquiry was required.  Blizzard never clearly and unequivocally asserted his desire to represent himself.  As such, the trial court's obligation to conduct a Faretta inquiry was never triggered.  See Gill, 633 F.3d at 1293; Boyd, 45 So. 3d at 558-59.  Moreover, the decision to assert speedy trial rights is not a core function of an attorney that would trigger a Faretta inquiry.  Boyd, 45 So. 3d at 559.  "In fact, [the Florida Supreme Court] has made clear that the client should be 'involved' with such a decision."  Id. at 559 (quoting State ex rel. Gutierrez v. Baker, 276 So. 2d 470, 471 (Fla. 1973)).  To that end, defense counsel and the court allowed Blizzard to voice his frustration and disagreement with delays due to having three different attorneys appointed to his case.  Regardless of whether the First District Court of Appeal considered Blizzard's filings to be legal nullities under state law or determined that counsel adopted the pleadings, the First District Court of Appeal would not have been unreasonable if it determined that no Faretta inquiry was required.

In consideration of the foregoing, the Court concludes that the state appellate court's summary adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state appellate court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Blizzard is not entitled to relief on Ground One.

## B. <u>Ground Two</u>

As Ground Two, Blizzard asserts first that the trial court erred in denying his motion for a judgment of acquittal because the circumstantial evidence was insufficient to establish that he was the perpetrator of the crime. <u>See</u> Petition at 6. Next, Blizzard contends that there was no evidence, other than the cause of death, to indicate that the murder was committed with a premeditated design or intent. <u>See</u> <u>id.</u> Finally, he asserts that there was no evidence to support the State's felony murder theory or the underlying felony, an unsupported burglary. <u>See</u> <u>id.</u> Blizzard contends that he exhausted these claims by raising them in his counseled direct appeal. <u>See</u> <u>id.</u> at 7. The First District Court of Appeal summarily affirmed the conviction and sentence per curiam without issuing a written opinion. <u>Blizzard</u>, 22 So. 3d at 540; Resp. Ex. M.

Respondents submit that Blizzard failed to fairly present these challenges as a federal constitutional claim to the state appellate court, rendering the claim unexhausted and procedurally defaulted. <u>See</u> Response at 17-19. In the alternative, Respondents assert that the claim lacks merit. <u>Id.</u> at 19-20.

In his Reply, Blizzard submits that he fairly presented the substance of his Fourteenth Amendment due process claim to the state appellate court by arguing that the

circumstantial evidence was insufficient to establish that he was the perpetrator of the crime.  <u>See</u> Reply at 9-10.  Also, Blizzard submits that his appellate attorney's ineffectiveness in failing to adequately argue on direct appeal that the trial court erred by denying his motion for judgment of acquittal provides cause to avoid a procedural bar.  <u>See</u> Reply at 10-11; <u>see also</u> Petition at 8-9; <u>infra</u> at Ground Three.  He asserts that prejudice is "apparent" in that the evidence was "wholly insufficient" and that he is serving a life sentence without parole for a crime he did not commit.  Reply at 11.

Before addressing Blizzard's distinct sub-claims, the Court will review the trial record.  At the close of the State's case, Blizzard's trial counsel challenged the sufficiency of the evidence by moving for a judgment of acquittal.

> THE COURT:  Okay.  You have a motion?
>
> MR. TILL:  A judgment of acquittal, Your Honor, motion.  The State has not made a prima facie case.  They attempted to start talking to the jury about some burglary and how a burglary can be committed, even though he wasn't charged with any burglary.  So they're right, it could be either premeditated murder or it can be felony murder.
>
> Ah, there is no evidence whatsoever that Mr. Blizzard – no evidence linking him to that crime scene on the 29th of November.  Um, no evidence of any burglary as far as felony murder is concerned.  And no premeditation, in the fact that he was even there at the crime scene has not been proven whatsoever.
>
> So based on that, I would ask that the Court grant a judgment of acquittal, Your Honor.
>
> THE COURT:  Ms. Hazel?
>
> MS. HAZEL:  Your Honor, the State has proved a prima facie case and we would ask that judgment of acquittal be denied.
>
> THE COURT:  How do you address comments on the finding about a burglary?

> MS. HAZEL: Your Honor, I believe the facts in this case show that jewelry was taken from her apartment, that she was murdered. The jury can apply any felony that they want for felony murder The State did talk to them about burglary in jury selection, however, they can find any felony that they want for felony murder, and the State feels that in argument we would argue that a burglary occurred in that Mr. Blizzard, when entering [her] apartment, entered under false pretenses with an intent to commit an offense inside her apartment, which was either to murder her or to steal from her upon entering the residence, leading to her death.
>
> Your Honor, I can continue further, if you would like.
>
> THE COURT: No, the motion is going to be denied. I was just looking at the jury instructions.

Resp. Ex. H at 829-30. Blizzard's trial counsel renewed his motion for judgment of acquittal based on the same grounds at the close of evidence, and the court again denied the motion. Resp. Ex. I at 1042. In his counseled direct appeal, Blizzard argued that his conviction was erroneously based on insufficient evidence of identity, but he did not argue that there was insufficient evidence of premeditation or felony murder. See Resp. Exs. J, L.

## 1. Insufficient Evidence of Identity

On appeal, Blizzard argued that the trial court erred by denying his motion for a judgment of acquittal based on insufficient circumstantial evidence to establish that he was the perpetrator. See Resp. Exs. J, L. In challenging his conviction, he relied on "Florida's unique rule for convictions based on circumstantial evidence." Preston, 785 F.3d at 461. As noted by the Eleventh Circuit,

> [i]t is an age-old rule in Florida that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis

of innocence." [Thorp v. State, 777 So. 2d 385, 389 (Fla. 2000) (per curiam) (quotation omitted)].

Preston, 785 F.3d at 460; see also White v. State, 214 So. 3d 541, ---, 2017 WL 1177640, at *5 (Fla. March 30, 2017); Hodgkins v. State, 175 So. 3d 741, 751 (Fla. 2015). Florida's special standard of review for cases based on wholly circumstantial evidence differs greatly from the federal standard of review articulated in Jackson v. Virginia, 443 U.S. 307 (1979).[5] See Preston, 785 F.3d at 460.

Although Blizzard challenged the trial court's denial of judgment of acquittal under state law, he failed to make any reference to a federal, constitutional violation of due process. Consequently, the First District Court of Appeal was never notified of any federal constitutional claim in his direct appeal, and presumably, the First District Court of Appeal exclusively applied state law in affirming the conviction. See id. at 461 ("We can safely assume that when the Florida [appellate court] considered [petitioner's] appeal, it did so through the prism of this longstanding state doctrine, rather than federal law."). Upon review of the Respondents' contention (see Response at 17-19), the Court agrees that Blizzard failed to exhaust his federal claim in state court. See French, 790 F.3d at 1271; Preston, 785 F.3d at 451; McNair, 416 F.3d at 1303; Zeigler, 345 F.3d at 1307, n.5.[6] As

---

[5] Under Jackson, a petitioner is entitled to relief under the Due Process Clause only if "no rational trier of fact could have found proof of [his] guilt beyond a reasonable doubt." 443 U.S. at 324. Even if the only evidence is circumstantial, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Id. at 326. As such, "[i]t is precisely the Florida rule . . . that the Supreme Court has rejected as a matter of federal law." Preston, 785 F.3d at 460.

[6] See also Ramos v. Sec'y, Dep't of Corr., 441 F. App'x 689, 697 (11th Cir. 2011) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner made only passing reference to federal constitutional right to due process in arguing that trial court improperly denied motion for judgment of acquittal because State failed to sufficiently prove premeditation element of murder); Pearson v. Sec'y, Dep't of Corr., 273

any future attempts to exhaust the claim would be futile, the claim is procedurally defaulted.  See Owen, 568 F.3d at 908 n.9.

Blizzard contends that his procedural default should be excused because he can show cause for and prejudice from the default.  He asserts that the ineffectiveness of his appellate counsel caused the procedural default.  See Carrier, 477 U.S. at 488; Philmore, 575 F.3d at 1264.  Before Blizzard may use an ineffectiveness of appellate counsel claim to establish cause to excuse his procedural default, he must have presented his ineffective assistance of appellate counsel claim to the state courts as an independent claim.  See Carrier, 477 U.S. at 488; Henderson, 353 F.3d at 896 n.22.  Although Blizzard filed a postconviction motion challenging his appellate attorney's effectiveness in failing to raise the sufficiency of the evidence on premeditation and felony murder (see infra, Ground Three), he never challenged his appellate counsel's failure to raise a federal constitutional claim regarding the sufficiency of the evidence of his identity as the perpetrator.  Thus, the state appellate court never had an opportunity to determine whether appellate counsel was ineffective for failing to raise a federal constitutional claim in connection with the denial of judgment of acquittal based on insufficient evidence of

---

F. App'x 847, 850 (11th Cir. 2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard); Cook v. McNeil, 266 F. App'x 843, 845-46 (11th Cir. 2008) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in Jackson v. Virginia, 443 U.S. 307 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court.").

identity, and this ineffective assistance of appellate counsel claim is unexhausted. Because Blizzard fails to show cause and prejudice to excuse this secondary layer of procedural default, he cannot show cause to excuse his primary procedural default. See Carpenter, 529 U.S. at 1591.

Thus, the Court determines that the claim has not been exhausted because Blizzard failed to fairly present it as a federal constitutional claim on direct appeal. The claim is procedurally barred, and Blizzard has not shown cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. As such, the claim must be denied.

Even if a federal, constitutional due process claim were not procedurally barred, however, Blizzard's claim would fail on the merits. The Due Process Clause "prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 309; see also Preston, 785 F.3d at 462. The Supreme Court has stated that Jackson claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, ---, 132 S. Ct. 2060, 2062 (2012) (per curiam); see also Preston, 785 F.3d at 463. In particular, the Supreme Court explained:

> First, on direct appeal, it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

Coleman, 650 U.S. at ---, 132 S. Ct. at 2062 (citations and quotations omitted). "'[T]he only question under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bar rationality,' and the state court's determination that it was not 'in turn is entitled to considerable deference under AEDPA.'" Preston, 785 F.3d at 463 (quoting Coleman, 650 U.S. at ---, 132 S. Ct. at 2065).[7]

At trial, the prosecution presented sufficient evidence for a rational trier of fact to conclude that Blizzard perpetrated the crime. Blizzard lived with his girlfriend in the apartment next door to the victim. Id. at 486, 554. Blizzard's DNA was found on the shirt worn by the victim at the time of her death and on the pillow found next to her. Resp. Ex. G at 779, 781-82, 785. A carpet cutting knife was also found at the scene, lodged under the victim's left side. Resp. Ex. E at 336. Blizzard, who was employed as a carpet installer, regularly carried a carpet knife. Resp. Ex. G at 622. In addition, a neighbor testified that around 12:30 a.m. on the night of the murder, she saw a man, whom she later recognized as Blizzard, walk to the top of the stairs near the victim's apartment and sit down. Resp. Ex. F at 558-62. Shortly thereafter, she heard a loud boom followed by silence. Id. at 560. Blizzard initially told police that he had spent the night of the murder at his boss's house, which was later proven to be untrue. Id. at 487. Also, although he initially told the police that he had never been inside the victim's apartment (id. at 471), he later told them that he had been in her apartment once a few months prior. Id. at 488. Blizzard's girlfriend testified that she had only seen him go into the victim's apartment

---

[7] As the Eleventh Circuit has recognized, "Florida's circumstantial evidence rule . . . 'has no place in our sufficiency of the evidence analysis.'" Preston, 785 F.3d at 463-64 (quoting Wilcox v. Ford, 813 F.2d 1140, 1145 n.7 (11th Cir. 1987)).

once.  Id. at 554.  Blizzard testified that he and the victim had an ongoing intimate relationship, which could explain the presence of his DNA in her apartment and on her green t-shirt (Resp. Ex. H at 950-60); however, there was no evidence to corroborate his testimony.  Given this record, there was sufficient evidence for the trial court to deny the motion for the judgment of acquittal and for the First District Court of Appeal to affirm the conviction.[8]  Even if a Jackson claim were not procedurally defaulted, the state appellate court's denial of Blizzard's insufficiency of the evidence claim was not erroneous, let alone objectively unreasonable.  Preston, 785 F.3d at 464.  Blizzard's sub-claim is due to be denied.

### 2.  Insufficient Evidence of Premeditation or Underlying Felony

Blizzard also asserts in his federal petition that the conviction relies on insufficient evidence to support premeditation or burglary underlying felony murder.   However, Blizzard completely failed to raise these claims on direct appeal.  See Resp. Ex. J.  Thus, the arguments relating to premeditation and burglary were not presented to the state court and are unexhausted.  See French, 790 F.3d at 1271; Preston, 785 F.3d at 451; McNair, 416 F.3d at 1303; Zeigler, 345 F.3d at 1307, n.5.  As any future attempts to exhaust the claims would be futile, the claims are procedurally defaulted.  See Owen, 568 F.3d at 908 n.9.

Blizzard contends that his procedural default should be excused because he can show cause for and prejudice from the default.  He asserts that the ineffectiveness of his

---

[8] In light of Blizzard's failure to obtain appellate relief under Florida law, "which appears to be more defendant-friendly when it comes to circumstantial evidence," any insufficient evidence claim he would have brought under Jackson would also have failed.  Preston, 785 F.3d at 462.

appellate counsel caused the procedural default. <u>See</u> <u>Carrier</u>, 477 U.S. at 488; <u>Philmore</u>, 575 F.3d at 1264. Indeed, Blizzard presented this ineffective assistance of appellate counsel claim to the state courts as an independent claim, <u>see</u> Resp. Ex. O; <u>see also</u> <u>infra</u> Ground Three, and has, therefore, complied with the exhaustion requirement. <u>See</u> <u>Carrier</u>, 477 U.S. at 488; <u>Henderson</u>, 353 F.3d at 896 n.22. However, the First District Court of Appeal denied his ineffective assistance of appellate counsel claim on the merits, <u>see</u> Resp. Ex. Q, and as the Court will discuss in Ground Three below, that decision was not an unreasonable application of <u>Strickland</u>. Because Blizzard's ineffective assistance of appellate counsel claim fails on the merits, it cannot serve as cause to excuse his procedural default in this sub-claim.

Ground Two is due to be denied.

## C. <u>Ground Three</u>

As Ground Three, Blizzard asserts that appellate counsel was ineffective by failing to argue that there was insufficient evidence to support a conviction for first degree murder under either the theory of felony murder or premeditated murder. <u>See</u> Petition at 8; Reply at 13. In his view, had appellate counsel properly argued the insufficiency of the evidence on direct appeal, the First District Court of Appeal would have reversed his conviction. <u>See</u> Reply at 12.

To exhaust his claim in state court, Blizzard filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel in the First District Court of Appeal. Resp. Exs. O, P. In the petition, Blizzard complained that appellate counsel was ineffective for failing to challenge the denial of the motion for judgment of acquittal on the basis of insufficient evidence of the burglary underlying the felony murder or

premeditation.  Resp. Ex. O.  The appellate court issued a per curiam opinion expressly denying the petition on the merits.  Resp. Ex. Q. Thus, the state appellate court's adjudication of this claim is entitled to deference under AEDPA.

According to Respondents, Blizzard has not demonstrated that appellate counsel performed deficiently or that any prejudice resulted as there is no reasonable probability that this claim would have been successful had it been raised on appeal.  Response at 22, 23.  Therefore, Respondents assert that the First District Court of Appeal's ruling was not an unreasonable application of Strickland.  See Response at 22, 23.

Preliminarily, the Court notes that Blizzard's appellate counsel had no duty to raise every non-frivolous issue on appeal, and it was reasonable for counsel to weed out weaker arguments.  See Overstreet, 811 F.3d at 1287.  To overcome the presumption that appellate counsel was effective, Blizzard must demonstrate that appellate counsel ignored issues that were clearly stronger than those presented.  See id.  In addition, Blizzard must show a reasonable probability that, but for the deficient performance, the outcome of the appeal would have been different.  See Black, 373 F.3d at 1142.

Blizzard's appellate counsel challenged his conviction for insufficient evidence of identity under Florida's unique standard of review for cases involving wholly circumstantial evidence, see supra, but did not challenge the sufficiency of the evidence required for first-degree murder based on either premeditation or felony murder.  For the reasons that follow, the First District Court of Appeal's decision is not an unreasonable application of Strickland because appellate counsel could have weeded out these issues as weaker or meritless, and it is not reasonably probable that these issues would have succeeded on appeal.

With respect to the felony murder theory, Blizzard submits that there was no evidence of any burglary other than the testimony of the victim's son who stated that some of the victim's jewelry was missing. See Petition at 8. Blizzard attempts to discount the son's testimony by contending that the son had not been to his mother's apartment in almost two years. Id. Blizzard also notes that there was no evidence of forced entry into the apartment. See Reply at 14. In addition, Blizzard contends that the State presented no evidence that he was in the victim's apartment on the date of the crime. See id. at 14-15. He asserts that the mere presence of his DNA in the apartment did not establish that he was there at the time of the murder. Petition at 8. He relies on the DNA analyst's admission that it was impossible to know when the DNA was deposited. See Reply at 14. As supplemental authority, he cites to Hodgkins v. State, 175 So. 3d 741 (Fla. 2015).[9]

The scope of Florida's felony murder statute includes the unlawful killing of a human being when committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any burglary. See Fla. Stat. §782.04(1)(a)(2)(e). Florida's burglary statute defines the crime as

1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or

2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:

---

[9] In Hodgkins, applying Florida's special standard of review in circumstantial evidence cases, the Florida Supreme Court vacated the defendant's conviction for premeditated murder because the record lacked competent, substantial evidence that was inconsistent with the defendant's theory of events. Hodgkins, 175 So. 3d at 751. Although Florida's unique standard of review was irrelevant to the federal due process error claimed in Ground Two, supra, the state-law standard is relevant when determining whether appellate counsel was ineffective for not raising insufficiency of the circumstantial evidence of felony murder and premeditation.

a. Surreptitiously, with the intent to commit an offense therein;

b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or

c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.

Fla. Stat. § 810.02(1)(b). The court properly instructed the jury on the elements of burglary. Resp. Ex. A at 106.

In this case, the victim's son testified that his mother always wore a Timex watch, a gold necklace with a cancer medallion, and earrings, and that at night, she kept her jewelry in a handmade dish on her dresser. Resp. Ex. E at 302-03. But the watch, necklace, and earrings were not found in the apartment and were never recovered. Resp. Ex. F at 496-97. A rational trier of fact could have concluded that the perpetrator entered the apartment with the intent to commit a theft or other offense within the apartment. Alternatively, a rational trier of fact could have concluded that the perpetrator remained either surreptitiously or after permission was withdrawn, with the intent to commit a theft or other offense therein. Moreover, the State produced competent, substantial evidence that was inconsistent with Blizzard's theory that no burglary occurred. See White, 214 So. 3d at --, 2016 WL 1177640, at *6.

With respect to the theory of premeditation, Blizzard asserts again that there was no evidence that he was in the apartment at the time of the murder. See Petition at 8; Reply at 16. In response to the State's argument that the nature of the victim's wounds and cause of death supported premeditation, Blizzard simply focuses on the lack of evidence establishing his identity as the perpetrator. See Reply at 15.

To prove first-degree premeditated murder, the State was required to establish that: (1) the victim was dead; (2) the victim's death was premeditated; and (3) the victim's death resulted from the criminal act of the defendant. Hodgkins, 175 So. 3d at 747. As explained by the Eleventh Circuit,

> Under Florida law, "[a] premeditated design to take the life of the person killed or any human being is an essential element of the crime of murder in the first degree." Forehand v. State, 126 Fla. 464, 171 So. 241, 242 (1936). Premeditation is defined as "a fully formed conscious purpose to kill which may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act."" Kocaker v. State, 119 So. 3d 1214, 1226 (Fla. 2013) (per curiam) (quotation omitted). Premeditation is a question of fact which can be established through circumstantial evidence, including "such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." Id. (quotation omitted).

Preston, 785 F.3d at 464; see also Bigham v. State, 995 So. 2d 207, 212 (Fla. 2008). In addition, "Florida courts have explained time and again that the nature of a victim's wounds is relevant to the question of premeditation." Preston, 785 F. 3d at 464.

In manual strangulation cases, Florida courts have found that evidence of killing by strangulation alone may be insufficient to support a jury finding of premeditation. As summarized by the Florida Second District Court of Appeal:

> Some jurisdictions hold that the length of time necessary to produce death by strangulation is sufficient by itself to support a jury finding of premeditation in a prosecution for murder in the first degree. See Perez-Ortiz v. State, 954 So. 2d 1256, 1259 (Fla. 5th DCA 2007) (collecting cases); Dupree v. State, 615 So. 2d 713, 718 n.1 (Fla. 1st DCA 1993). This view does not prevail in Florida. On the contrary, the Florida courts deem evidence of killing by strangulation alone to be insufficient to support a jury finding of premeditation. See

33

> Bigham v. State, 995 So.2d 207, 212-13 (Fla. 2008); Randall
> [v. State, 760 So. 2d 892, 901-02 (Fla. 2000)]; Green v. State,
> 715 So. 2d 940, 941, 943-44 (Fla. 1998); Hoefert v. State, 617
> So. 2d 1046, 1048-49 (Fla. 1993); Perez-Ortiz, 954 So. 2d at
> 1259. However, evidence of strangulation, in conjunction with
> one or more additional facts indicating that the killer had time
> to reflect upon his actions and to form a conscious purpose to
> kill, justifies submitting the question of premeditation to the
> jury for its determination. See Dupree, 615 So. 2d at 718 n.1.

Berube v. State, 5 So.3d 734, 744 (Fla. 2d DCA 2009). For example, the First District

Court of Appeal in Dupree considered, among other reasons, that "[t]he appreciable time

between the struggle, the beating, and the strangulation, however, small, would be

sufficient time for the assailant to reflect upon his actions, and supports a jury verdict of

premeditated murder." Id. at 718-19.

Here, the medical examiner opined that the cause of death was asphyxia by

manual strangulation. Resp. Ex. F at 423. He testified that there was evidence of

abrasions, scrapes, and pressure marks on the victim's neck, id. at 428, and that these

wounds were consistent with manual strangulation. Id. at 429. He also testified that there

were curved bruises that were consistent with fingernails, id., and bruising on the jaw line

that could indicate a repositioning of the hands during strangulation. Id. at 430. He

testified that the shortest amount of time necessary for a person to lose consciousness

by manual strangulation was five to six seconds (id. at 433), and that it would take an

additional 90 seconds to two and a half minutes to die. Id. at 434. He further opined that

the victim was definitely strangled and also smothered. Id. at 430, 456. The victim had

a patterned injury by her collarbone that was consistent with a pillow or a t-shirt hem. Id.

at 444-47. A pillow containing both the victim's and Blizzard's DNA was found on the

floor next to the victim. Resp. Ex. E at 333, 335, 337-38; F at 493; G at 718, 785. The

State presented competent, substantial evidence of additional facts indicating that the killer had time to reflect upon his actions and to form a conscious purpose to kill.  See Berube, 5 So. 3d at 744; see also White, 214 So. 3d at --, 2017 WL 1177640, at *6.

In determining which issues to pursue on appeal, appellate counsel may have strategically "weeded out" these felony murder and premeditation arguments as weaker than the issues counsel raised.  See Philmore, 575 F.3d at 1264.  In light of the son's testimony about the victim's jewelry, appellate counsel could have determined not to pursue the felony murder argument on appeal.  Also, given the testimony of the medical examiner, appellate counsel could have determined not to challenge whether there was sufficient time for the perpetrator to reflect upon his actions, even if the special standard for circumstantial evidence applied.  After all, both trial and appellate counsel focused their strategies on the lack of direct evidence of identity, and trial counsel offered alternate explanations for the presence of the circumstantial DNA evidence in the victim's apartment.  Indeed, Blizzard himself testified that his DNA could have been present in her apartment because of their secret relationship.  Appellate counsel may have strategically decided to focus on the identity aspect of the defense, which could result in acquittal, rather than the elements of the offense, which could have, at best, resulted in a reduction from first to second degree murder.  "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'"  Chandler v. United States, 218 F.3d 1305, 1313-15 (11th Cir. 2000) (quoting Strickland, 104 S. Ct. at 2065-66); see also Richter, 562 U.S. at 110 ("Strickland does not guarantee perfect representation, only a 'reasonably competent attorney.'").

Ultimately, the Court defers to the First District Court of Appeal's adjudication of this claim. After a review of the record and the applicable law, the Court concludes that the state appellate court's adjudication of this claim was neither contrary to nor an unreasonable application of Strickland. Also, the state court's adjudication was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Blizzard is not entitled to relief on the basis of this claim. Ground Three is denied.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Blizzard seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Blizzard "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of the Court** shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Blizzard appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The **Clerk of the Court** is directed to close this case and terminate any pending motions.

DONE AND ORDERED at Jacksonville, Florida, this 1st day of June, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc22
c:
Adam Blizzard, FDOC # 535179
Counsel of Record